NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 4 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-3956 |
| Plaintiff - Appellee, | D.C. No. 2:21-cr-00222-FLA-1 |
| v. | MEMORANDUM* |
| ALEXANDER DECLAN BELL WILSON, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted May 12, 2025
Pasadena, California

Before: OWENS, BENNETT, and H.A. THOMAS, Circuit Judges.

Alexander Declan Bell Wilson appeals from his jury conviction of

distributing fentanyl that killed a minor, N.Y. Wilson argues that several errors

made his trial fundamentally unfair. As the parties are familiar with the facts, we

do not recount them here. We have jurisdiction under 28 U.S.C. § 1291. We

reverse and remand for retrial.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1.	We reject Wilson's challenges to the following:

a.	We review Wilson's due process challenge regarding the two defense witnesses who invoked their Fifth Amendment privilege against self-incrimination for plain error because Wilson did not raise this challenge below.  *See United States v. Jaeger*, 538 F.3d 1227, 1230 (9th Cir. 2008).  There were no errors.

First, there is no evidence in the record suggesting either the government or the district court "substantially interfere[d]" with the witnesses' decisions whether to testify.  *United States v. Vavages*, 151 F.3d 1185, 1189 (9th Cir. 1998).

Second, "[a] criminal defendant is not entitled to compel the government to grant immunity to a witness."  *United States v. Whitehead*, 200 F.3d 634, 640 (9th Cir. 2000) (quoting *United States v. Westerdahl*, 945 F.2d 1083, 1086 (9th Cir. 1991)).  No exception to this general rule applies as Wilson has not shown prosecutorial misconduct.  *See id.*

b.	The district court did not abuse its discretion in denying Wilson's motion to admit the declaration of one of his witnesses as a statement against interest under Federal Rule of Evidence 804(b)(3).  Assuming without deciding the statements in the declaration were "truly self-inculpatory," the district court correctly found the statements were not "supported by corroborating circumstances that clearly indicate [their] trustworthiness."  *United States v. Gadson*, 763 F.3d 1189, 1199–1200 (9th Cir. 2014) (citations omitted).

For the same reasons, the district court did not abuse its discretion in declining to admit the declaration under Rule 807, which provides a hearsay exception for statements "supported by sufficient guarantees of trustworthiness." Fed. R. Evid. 807(a)(1); *see also United States v. Fowlie*, 24 F.3d 1059, 1069 (9th Cir. 1994) (no error in refusing to admit a hearsay statement under Rule 804(b)(5), subsequently transferred to Rule 807, for similar trustworthiness issues).

c.      The district court did not abuse its discretion by discharging a sick juror for good cause after jury deliberations commenced. *See United States v. Vartanian*, 476 F.3d 1095, 1098 (9th Cir. 2007) (good cause includes sickness).

d.      The district court did not abuse its discretion by refusing to give Wilson's proposed third-party liability jury instruction because it was essentially another reasonable doubt instruction, which was covered by other instructions. *See United States v. Keyser*, 704 F.3d 631, 641–42 (9th Cir. 2012). The instruction also unduly emphasized Wilson's view of the evidence. *See id.* at 642.

e.      The district court did not abuse its discretion by giving Jury Instruction 30. The court addressed and "eliminated" the jurors' confusion as to the knowledge requirement in the instruction. *United States v. Castillo-Mendez*, 868 F.3d 830, 835 (9th Cir. 2017) (citation omitted).

f.       The district court did not commit reversible error by not giving a lost or destroyed evidence instruction. *See United States v. Robertson*, 895 F.3d 1206, 1213–14 (9th Cir. 2018).

2.       "We review for abuse of discretion a claim that the trial court improperly excluded evidence of third-party culpability." *United States v. Wells*, 879 F.3d 900, 937 (9th Cir. 2018) (quoting *Territory of Guam v. Ignacio*, 10 F.3d 608, 611 (9th Cir. 1993)). We hold that the district court abused its discretion, and the error was not harmless. Thus, we reverse and remand.

a.       The district court abused its discretion by excluding: 1) the testimonies of Special Agent Robert Thomas and Officer Robert Poindexter regarding Jose Arambula's other drug dealings via Snapchat, including the Drug Enforcement Administration's ("DEA") undercover buys, 2) evidence of Arambula's 2021 arrest and subsequent interview, 3) criminalist Julie Soltis's testimony that Arambula sold counterfeit oxycodone containing fentanyl, and 4) evidence regarding the deaths of Arambula's Snapchat contacts.[1]

"[A]ll evidence of third-party culpability that is relevant is admissible, unless barred by another evidentiary rule." *United States v. Espinoza*, 880 F.3d 506, 511 (9th Cir. 2018). The excluded evidence was clearly relevant under Rule

[1] On retrial, the district court may, after receiving appropriate offers of proof as to the evidence in these categories, apply Rule 403 in evaluating the scope of third-party culpability evidence.

401.  First, the evidence tended to make the fact that a third party sold drugs to N.Y. more probable "than it would be without the evidence," Fed. R. Evid. 401(a), as it shows someone else had the opportunity and ability to sell the drugs that killed N.Y., *see United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996).  The evidence would have shown that a drug dealer, who sold counterfeit oxycodone laced with fentanyl despite knowing that people "probably die" from taking the pills, messaged and called N.Y. before and after he died.  It also shows that Arambula marketed his pills on Snapchat, which is the platform N.Y. used to message Arambula.  Second, the excluded evidence was "of consequence in determining" whether the drugs Wilson sold caused N.Y.'s death.  Fed. R. Evid. 401(b); *see also United States v. Vo*, 413 F.3d 1010, 1018–19 (9th Cir. 2005) (considering prior act evidence under Rule 404(b)).  The similarities between Arambula's drug dealings and his interactions with N.Y. provide "an alternative theory of" who gave N.Y. the fentanyl that killed him.  *United States v. Vallejo*, 237 F.3d 1008, 1023 (9th Cir.) (quoting *Crosby*, 75 F.3d at 1347), *opinion amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001).

Rather than applying the liberal standard of relevance under Federal Rule of Evidence 401, *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993), the district court applied a heightened relevancy requirement we explicitly rejected in *Espinoza* to exclude Wilson's third-party culpability evidence, *see* 880

F.3d at 514. Over multiple pre-trial conferences, the district court found Wilson could not "connect" the third-party culpability evidence to N.Y.'s death, he did not have evidence that Arambula actually delivered drugs to N.Y. the night in question, and the evidence did not "prove" Arambula "caused" N.Y.'s death. But "third-party culpability evidence, to be admissible, need not be sufficient to sustain a guilty verdict against the third party." *Bradford v. Paramo*, 100 F.4th 1088, 1098 (9th Cir. 2024). "It need only have the potential, considered along with other evidence in the record, to raise a reasonable doubt as to the guilt of the defendant." *Id.* By requiring Wilson to show something more than relevance, the district court abused its discretion.

For example, Wilson sought to introduce criminalist Julie Soltis's testimony that the pills Arambula sold to the DEA around fifteen months after N.Y.'s death were counterfeit oxycodone pills containing fentanyl. The district court concluded this evidence was not "sufficiently probative" because Wilson lacked evidence that Arambula actually delivered pills to N.Y. But the evidence shows another drug dealer who contacted N.Y. the night he died had the means and opportunity to sell fentanyl. That this specific transaction was "15 months later," does not render it irrelevant. *See Vo*, 413 F.3d at 1018–19. This evidence is especially probative here, where the government did not run tests on Wilson's pills to determine

23-3956

whether they contained fentanyl instead of other drugs like MDMA, which was found in N.Y.'s toxicology report.

The government argues that the district court properly excluded the relevant third-party culpability evidence under Rule 403. Although the district court mentioned Rule 403, it ultimately concluded the excluded evidence was not relevant. To the extent the district court applied Rule 403, its application was erroneous because it did not appropriately weigh the relevance of the evidence.

The death of one individual, S.H., is especially significant. S.H. was another minor who died of a fentanyl overdose approximately three months after N.Y. died. Like N.Y., S.H. communicated with Arambula via Snapchat about purchasing oxycodone and died a week after that communication. S.H.'s case was an example of another minor who overdosed from the same drug as N.Y. (fentanyl), in the same region, after communicating with the same drug dealer (Arambula), requesting to purchase the same drug ("Oxy"), through the same social media platform (Snapchat). Yet the district court concluded S.H.'s case had "no bearing or relevance whatsoever to the charge in this case," and excluded the evidence under Rule 403 on grounds that it was "highly speculative" and "unduly prejudicial." This was erroneous.

First, "[t]hat the defense's theory may be speculative is not a valid reason to exclude evidence of third-party culpability." *Espinoza*, 880 F.3d at 517. Thus, the

district court erred by excluding the evidence as speculative. Second, because the district court did not appreciate the relevance of this evidence, it erroneously concluded the evidence was unduly prejudicial. The probative value of S.H.'s death is not "*substantially* outweigh[ed]" by the danger of unfair prejudice. *United States v. Haischer*, 780 F.3d 1277, 1281–82 (9th Cir. 2015) (quoting *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995)).

To the extent Wilson sought to show Arambula was a mass murderer who caused the deaths of more than fifty people, the district court properly excluded the evidence under Rule 403. The probative value of this evidence is substantially outweighed by the danger of presenting cumulative evidence and unfair prejudice as it may sway jurors to rely on how "bad" Arambula is to find Wilson not guilty. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005).

b. "Given the lack of direct evidence supporting [Wilson's] conviction and the centrality of th[e] [third-party culpability] evidence to [his] case, the error was not harmless." *Vallejo*, 237 F.3d at 1024. The excluded evidence went to the heart of Wilson's defense—that someone else had the opportunity and ability to sell the drugs that killed N.Y. The length of the jury deliberations and the fact that the jury could not reach a verdict until after two jurors were discharged and replaced with alternates also weigh against a finding of harmlessness. *See United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001) (en banc).

3.     "We review a district court's decision to admit or exclude expert testimony for an abuse of discretion." *United States v. Campos*, 217 F.3d 707, 710 (9th Cir. 2000). We hold the district court abused its discretion in excluding Carla Zuniga's expert opinion that drug dealers do not give "friendly advice."[2]

Expert testimony must be reliable to be admissible. *United States v. Holguin*, 51 F.4th 841, 854–55 (9th Cir. 2022). In the context of non-scientific experts, reliability "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id.* at 858 (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)). For example, "[o]fficers may testify about their interpretations of 'commonly used drug [or gang] jargon' based solely on their training and experience." *Id.* at 856 (alterations in original) (quoting *United States v. Vera*, 770 F.3d 1232, 1241 (9th Cir. 2014)).

Here, the district court abused its discretion by "fail[ing] to distinguish between the threshold question of admissibility of expert testimony and the persuasive weight to be accorded such testimony by a jury." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998). The district court excluded Zuniga's testimony as unreliable because Zuniga last worked in the field of narcotics

---

[2] To the extent Wilson argues the district court abused its discretion in excluding Zuniga's expert testimony that Arambula gave N.Y. pills that he knew contained fentanyl and "were dangerous," we agree such testimony would be unhelpful as it "tell[s] the jury what result to reach." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citation omitted).

seventeen years before N.Y.'s death, and her experience did not include the sale of fentanyl or oxycontin, or the use of social media or a smart phone. But these are issues of credibility and weight that the jury should have had the opportunity to consider. *See United States v. Scheffer*, 523 U.S. 303, 313 (1998) (plurality opinion).

The error was not harmless. Zuniga's testimony was important for Wilson's main defense, and without it Wilson could not rebut Agent Thomas's testimony that Arambula was just giving "friendly advice."

**REVERSED AND REMANDED FOR RETRIAL.**